UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLECIA Y. HORAM, <br><br> Plaintiff, <br><br> v. <br><br> JP MORGAN CHASE BANK, N.A. <br><br> Defendant. | CIVIL ACTION 1:16-cv-08572 <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, Marlecia Y. Horam ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of Defendant, JP Morgan Chase Bank, N.A., ("Chase" or "Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 et seq., and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA, FCRA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4. Venue in this district is proper because Defendant does business in this district and the all relevant acts or omissions harming Plaintiff occurred in this district.

1

## PARTIES

5. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, owned and resided at the real property located at 5344 South Michigan Avenue, Unit 3A, Chicago, Illinois 60615 ("subject property").

6. Defendant Chase is a national banking association organized under the laws of the United States with its principal place of business at 270 Park Avenue, New York, New York. Chase is a foreign company, a creditor, lender, debt collector, furnisher of credit information, and servicer of mortgage loans across the country, including the State of Illinois. Chase is a furnisher of information to the major credit reporting agencies.

## BANKRUPTCY CASE

7. On March 26, 2012, Plaintiff executed a mortgage and note ("subject loan," or "subject debt") in favor of Chase, secured by the subject property.

8. On February 28, 2013, Plaintiff filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court, Northern District of Illinois, Case number 13-08016 ("bankruptcy").

9. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to Chase, in the amount of $128,946.00, secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

10. On March 1, 2013, because Plaintiff listed Chase as a creditor, the Bankruptcy Noticing Center ("BNC") served Chase with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan. *See* Exhibit B, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan upon Chase.

11. Plaintiff's Original Plan proposed to treat Chase's claim as follows:

> "Debtor is surrendering the real property located at 5344 South Michigan Avenue, Unit 3A, Chicago, Illinois to JPMorgan Chase in full satisfaction of its claims." *Id.* at 5.

2

12. On April 30, 2013, the 341 Meeting of the Creditors was held with the Chapter 13 Trustee. No representatives of Chase appeared at the 341 Meeting of the Creditors.

13. Also on June 4, 2013, the Original Plan was confirmed by the Honorable Jacqueline P. Cox. *See* Exhibit C, a true and correct copy of the Confirmation Order.

14. Plaintiff fully performed her duties and made all payments as was required under the terms of her confirmed Chapter 13 Plan.

15. On November 12, 2014, the Bankruptcy Court entered a Discharge Order in Plaintiff's bankruptcy case discharging all dischargeable debts, including the subject loan. *See* Exhibit D, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of Discharge upon Chase.

16. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor..." *Id.* at p. 2.

17. On November 14, 2014, the BNC served Chase with the Order of Discharge. *Id.* at p. 3.

18. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Chase, or any other party.

19. Plaintiff's personal liability on the subject loan was extinguished via her bankruptcy discharge, thus terminating the business relationship with Chase, and any of its successors and assigns.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EQUIFAX

20. In April 2015, after Plaintiff received her discharge, Plaintiff pulled her credit reports to make sure all creditors were reporting accurately and discovered that Equifax and Chase were reporting the subject loan with a high monthly payment amount and without a discharged status.

21. The reporting of the subject loan was inaccurate and misleading because the subject loan was discharged in Plaintiff's bankruptcy on November 12, 2014, and thus should not have been reporting a "Scheduled Payment Amount" of greater than $0 and should have been reporting that the subject loan was discharged in Plaintiff's bankruptcy.[1]

### a. Plaintiff's Dispute Letter to Equifax

22. On August 10, 2015, Plaintiff sent a written credit dispute letter to Equifax requesting that her credit file be updated to reflect the zero balances of all accounts discharged in her Chapter 13 bankruptcy. Plaintiff also specifically disputed the Chase trade line [**Account #465158517\***]. Plaintiff attached all relevant and supporting bankruptcy documents to her dispute letter. *See* Exhibit E, a true and correct copy of Plaintiff's August 10, 2015 dispute letter to Equifax.

23. Among other things, Plaintiff's dispute letter stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on 11/12/2014;"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts as indicated on the Final Report from the Trustee;"
   c. "To the extent that any of the discharged debts are reporting anything other than a "0" balance, please consider this letter as a Dispute under the Fair Credit Reporting Act;"
   d. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice, regarding each creditor listed on the attached Schedules D, E, and F;"
   e. "Specifically, I am requesting an investigation into the following accounts: **Chase Mortgage, account # 1585172196**;"

---

[1] Pursuant to the Consumer Data Industry Association ("CDIA") guidelines, furnishers of information are required to report a "Scheduled Monthly Payment Amount" of Zero, following completion of a debtor's Chapter 13 Plan. *See* 2013 CDIA Manual; page 6-21.

  f. "It is also my understanding that pursuant to the Fair Credit Reporting Act you are required to conduct an investigation and reinvestigation of each of the items in my report;"
  g. "In addition, it is my understanding that each of the above creditors is required to investigate my disputes upon receipt of notification from you of this information;" and
  h. "I request that you forward this letter, and the enclosures, to any of the creditors listed above"

24. Plaintiff sent her dispute letter to Equifax via certified mail, return-receipt requested. *Id.*

25. Upon information and belief, Chase received notice of Plaintiff's dispute letter and all relevant bankruptcy information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S. Code §1681i(a)(2).

  **b. Equifax's Response to Plaintiff's Dispute Letter**

26. On September 5, 2015, Equifax responded to Plaintiff's dispute letter by correcting some of the accounts discharged in her bankruptcy, but not the Chase account. Equifax's response stated that the Chase trade line is currently reporting included in bankruptcy.

27. Despite Equifax's representation that the Chase trade line is currently reporting as included in bankruptcy, Chase was still reporting the subject loan with a "Scheduled Payment Amount" of $853.00.

28. Moreover, Chase failed to report the subject loan as discharged in bankruptcy.

29. The reporting of the Chase trade line is inaccurate and creates a materially misleading impression that Plaintiff is still responsible for and obligated to pay the monthly payment amount. However, Plaintiff is no longer liable on the subject loan because the subject loan was discharged, in Plaintiff's Chapter 13 bankruptcy, on November 12, 2014.

## IMPACT OF CONTINUING
## INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE

30. The erroneous reporting of the Chase account paints a false and damaging image of Plaintiff. After it was provided notice by Equifax, Chase did not update the Chase trade line to accurately reflect the discharged status of the subject loan.

31. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to her ability to regain a firm foothold on her creditworthiness, credit standing, credit capacity, and her ability to move forward after her bankruptcy discharge.

32. The inaccurate reporting of subject loan had significant adverse effects on Plaintiff's credit rating because it created a false impression that Plaintiff was still obligated to pay on the subject loan, rendering Plaintiff a high risk consumer and damaging her creditworthiness.

33. As a result of the conduct, actions, and inaction of Chase, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her dispute, monitoring her credit file, and mental and emotional pain and suffering.

## CHASE'S POST-DISCHARGE COMMUNICATIONS

34. After the discharge injunction had taken effect, Chase sought to collect the subject debt from Plaintiff personally.[2]

---

[2] Pursuant to Plaintiff's Chapter 13 Plan, no payments were to be made to Chase as Plaintiff's Confirmed Plan surrendered the subject property to Chase in full satisfaction of its claims.

35. With actual knowledge of Plaintiff's Chapter 13 bankruptcy and her subsequent discharge, Chase began to send demands for payment on the subject debt.

36. From September 16, 2014 through February 16, 2016, Chase sent Plaintiff dunning letters each month stating: "**You've missed one or more payments and your mortgage loan is in default**." *See* Group Exhibit F, true and correct copies of Chase's dunning letters sent to Plaintiff from September 16, 2014 through February16, 2016.[3]

37. Each of Chase's dunning letters lists payment due dates, amounts due, explanations of amounts payable, possible payment methods, and each further stated that a late fee will be charged for untimely payment. Most notably, a payment coupon was attached to each letter.

38. Chase's collection efforts occurred with actual knowledge of Plaintiff's bankruptcy filing. and subsequent discharge. Chase knew that the subject debt was discharged in Plaintiff's bankruptcy on November 12, 2014.

39. Shortly after Chase began sending dunning letters to Plaintiff, Chase also began to make collection calls to Plaintiff's cellular phone from various telephone numbers.

40. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of a cellular telephone with the assigned number ending in 1609. Plaintiff is and has always been financially responsible for her cellular phone and its services.

41. Starting in July 2015, Chase began placing collection calls to Plaintiff erroneously alleging that the subject loan is in default and seeking payment to cure the default.

42. Immediately after the collection calls began, Plaintiff advised Chase that she has filed for bankruptcy and demanded that Chase cease all collection calls to her cellular phone.

---

[3] It should be noted that in each of Chase's dunning letters, Chase represents that, "This communication is an attempt to collect a debt and any information obtained will be used for that purpose." *Id*.

43. Notwithstanding Plaintiff's demand that Chase cease its collection calls, Chase placed or caused to be placed collection calls to Plaintiff's cellular phone at least once a week from July 2015 through January 2016.

44. Throughout that period, Plaintiff answered approximately 3 phone calls, and in each answered phone call, Plaintiff requested that Chase's phone calls cease.

45. During the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Chase's telephone system attempted to connect the Plaintiff to a live telephone agent.

46. Despite Plaintiff's repeated requests that the calls cease, Chase placed or caused to be placed no less than 21 phone calls to Plaintiff's cellular phone from July 2015 through January 2016, in an attempt to collect upon the subject loan.

47. Plaintiff's requests that Chase's phone calls cease fell on deaf ears and Chase continued its phone harassment campaign.

48. Chase's collection efforts were highly confusing and upsetting to Plaintiff. Plaintiff suffered from emotional distress and anxiety as she was led to believe that her bankruptcy had no legal effect and that she was still obligated on the subject debt.

**DAMAGES**

49. In November 2015, feeling stressed and overwhelmed by Chase's harassment, Plaintiff sought psychiatric treatment to help her cope with severe emotional distress. Plaintiff was subsequently diagnosed with anxiety and depression and has been on medication since that visit. Chase's relentless phone calls, and collection letters instantaneously trigger and exacerbate Plaintiff's symptoms.

50. Moreover, Plaintiff was admitted to an outpatient mental care center in February of 2016. Chase's actions and inactions have caused Plaintiff to be perpetually stressed, irritable and aggravated, thus adversely affecting Plaintiff's daily life and general well-being.

51. Plaintiff has suffered and continues to suffer emotional distress, depression, mental anguish, and extreme anxiety as a direct result of the unlawful collection practices of Chase.

52. Chase's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time and causing risk of injury by interrupting and distracting Plaintiff, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

53. Concerned about the violations of her rights, Plaintiff sought the assistance of counsel.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

54. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Chase placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without her consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

56. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

57. Based on the lack of prompt human response during the phone calls in which Plaintiff answered, Chase used a predictive dialing system to place calls to Plaintiff's cellular telephone.

58. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1043* (9th Cir. 2012).

59. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

60. Upon information and belief, the predictive dialing system employed by Chase transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

61. Chase violated the TCPA by placing no less than 21 calls from July 2015 through January 2016, using an ATDS without her prior express consent. Moreover, Plaintiff demanded that Chase cease calls to her cellular phone on no less than 3 separate occasions during the phone calls she answered.

62. As pled above, Plaintiff was severely harmed by Chase's collection calls to her cellular phone.

63. Upon information and belief, Chase has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

64. Upon information and belief, Chase knew its collection techniques were in violation of the TCPA, yet continued to employ them in an attempt to increase profits at Plaintiff's expense.

65. Chase, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

66. Pursuant to 47 U.S.C. §227(b)(3)(B), Chase is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Chase's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff MARLECIA Y. HORAM respectfully requests that this Honorable Court:

a. Declare Chase's phone calls to Plaintiff to be violations of the TCPA;

b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

c. Award any other relief this Honorable Court deems equitable and just.

### COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

67. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

68. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

69. Chase is a "person" as defined by 15 U.S.C. §1681a(b).

70. Chase is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

71. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

72. Chase violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax.

73. Chase violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax pursuant to §1681i(a)(2).

74. Had Chase reviewed the information provided by Equifax, it would have corrected the inaccurate designation of the subject loan, thus transmitting the correct information to Equifax. Instead, Chase wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

75. Chase violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes to Equifax.

76. Chase violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information on Plaintiff's credit file. Instead, Chase continued to report the inaccurate and misleading information in Plaintiff's credit file after Plaintiff's detailed dispute.

77. Chase failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

78. Chase violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

79. Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Chase did not correct the errors or trade line to report accurately. Instead, Chase wrongfully re-reported, furnished and re-furnished false and erroneous information that Plaintiff was still responsible for and obligated to pay the monthly payment amount. However, Plaintiff is no longer personally liable on the subject loan as the subject loan was discharged in Plaintiff's Chapter 13 bankruptcy on November 12, 2014.

80. Chase's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an

12

extent that it [could] be expected to have an adverse effect" on Plaintiff. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008); *see also Freedom v. CitiFinancial, LLC*, 2016 U.S. Dist. LEXIS 97533. (7th Cir. 2016).

81. A reasonable investigation by Chase would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit file.

82. Had Chase taken steps to investigate Plaintiff's valid dispute or Equifax requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information regarding her dispute in her requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

83. By deviating from the standards established by the mortgage servicing industry and the FCRA, Chase acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE**, Plaintiff MARLECIA Y. HORAM respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681*n*;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681*n* and 15 U.S.C. §1681*o*;
f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681*n* and 15 U.S.C. §1681*o*; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**COUNT III - VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT**

84. Plaintiff restates and reallages paragraphs 1 through 53 as through fully set forth herein.

85. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

86. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

87. Defendant is engaged in commerce in the State of Illinois with regard to Plaintiff, and the subject debt. Defendant specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in its regular course of business.

88. Defendant violated 815 ILCS 505/2 by engaging in unfair and deceptive acts in its attempts to collect the subject debt from Plaintiff personally.

    **a. Unfairness**

89. Chase is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject loan, and the subject property. Chase is a banking institution specializing in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in their regular course of business. 815 ILCS 505/1(f).

90. Chase's demands for payment on the subject loan, which was duly scheduled in Plaintiff's bankruptcy and subsequently discharged, represents the use of false pretenses and misleading communications to attempt to collect a debt that was not owed at the time the demands for payment were made.

91. It was unfair for Chase to seek to collect the subject loan from the Plaintiff through misleading dunning letters after Plaintiff's discharge in November 12, 2014.

92. It was unfair for Chase to place or cause to be placed no less than 21 harassing phone calls to Plaintiff's cellular phone from July 2015 through January 2016, using an ATDS without her consent with calls, at times, being made up to 4 times in a week.

93. It was unfair for Defendant to continue placing calls to Plaintiff after she demanded that the calls cease on no less than 3 separate occasions.

94. Moreover, Chase's unfair conduct is against public policy because it needlessly subjects consumers to unsolicited calls and dunning letters resulting in a significant harm in the form of invasion of privacy.

95. It was unfair for Chase to attempt to induce the Plaintiff into making payments on an uncollectible loan by repeatedly sending dunning letters, and placing collection calls after it was told by Plaintiff to cease communications.

96. It was unfair for Chase to continue contact with Plaintiff after Plaintiff demanded that all contact cease on at least 3 occasions to Chase and per the mandates of the discharge injunction.

97. Chase intended that Plaintiff rely on its unfair acts.

98. Chase violated 815 ILCS 505/2 by engaging in unfair practices to collect on a discharged debt.

99. Chase's demands for payment represent the use of deception, fraud, and false pretense in an attempt to collect a debt because it was not owed at the time the demands for payment were made.

### b. Deception

100. Chase's demands for payment were deceptive because they were systematically calculated to mislead Plaintiff into believing the subject debt was owed, when in fact the subject debt was discharged in Plaintiff's bankruptcy.

101. Chase's demands for payment were systematically calculated to induce payment on a debt that is no longer owed.

102. Chase intended that Plaintiff rely on its deceptive acts.

103. Chase violated 815 ILCS 505/2 by engaging in deceptive practices to collect on a discharged debt.

104. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers paying debts that are not owed.

105. Such deceptive conduct is part of a pattern and practice of behavior in which Chase routinely engages as part of its business model. It is Chase's normal business practice to falsely represent to consumers that a debt is owed, when in fact it is not, solely to serve Chase's pecuniary interest.

106. As alleged above, Plaintiff was substantially harmed by Chase's conduct.

107. An award of punitive damages is appropriate because Defendant's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and consumers generally, and Plaintiff had no choice but to submit to the harassing phone calls and dunning letters.

**WHEREFORE**, Plaintiff MARLECIA Y. HORAM respectfully requests that this Honorable Court:
    a. Enter judgment in Plaintiff's favor and against Chase;
    b. Award Plaintiff her actual damages in an amount to be determined at trial;
    c. Award Plaintiff her punitive damages in an amount to be determined at trial;

    d.  Award Plaintiff her reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

    e.  Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: August 31, 2016                                                **Respectfully Submitted,**

                                                                                            /s/ Majdi Y. Hijazin

                                                                                          Majdi Y. Hijazin, *Of Counsel*
                                                                                          *Counsel for Plaintiff*
                                                                                          Sulaiman Law Group, Ltd.
                                                                                          900 Jorie Blvd, Ste 150
                                                                                          Oak Brook, IL 60523
                                                                                          Phone :(630)575-8181
                                                                                          Fax: (630)575-8188
                                                                                          mhijazin@hijazinlaw.com